ISAAC N. HARTWELL & others vs. WILLIAM W. RICE & others.

A written acknowledgment, signed by husband and wife, in these words, " Received of
   J. S. $500, it being a part of my wife's portion," and found among the notes of J. S. after
   his decease, is sufficient proof of an advancement to the wife under Rev. Sts. c. 61, § 9.
So of an acknowledgment in writing by a husband, whose wife is insane, of a gift from her
   father for her support, " as a part of her portion out of her father's estate," preserved by
   the father in a bundle of letters relating to her support at an asylum for the insane.
The execution of a will, which is afterwards revoked, cannot operate as an extinguishment
   or merger of previous advancements.
The production of a book of accounts, kept by a person deceased, with three leaves cut
   out, together with evidence of his declarations that he had made charges in his book, as
   advancements to his children, are not competent evidence of such advancements.

APPEAL from a decree of the judge of probate, ordering a distribution among the heirs at law of Luther Stone, of Oxford, deceased, intestate.

At the hearing before *Thomas*, J. it appeared that Luther Stone died on the 19th of November 1852, leaving both real and personal estate, and the following heirs at law : Three sons, Loomis, Luther and Lewis, and the children of three daughters, namely, Isaac N. Hartwell, only child of the intestate's daughter Sarah, lately the wife of Isaac B. Hartwell; six children of the intestate's daughter Permelia, lately the wife of John Stone; and William W. Rice and three other children of the intestate's daughter Julia, formerly the wife of Leonard Rice, and since of one Smith. The appellants were the children of Sarah Hartwell and Permelia Stone.

The first reason of appeal was, that the judge of probate allowed, as an advancement towards the share of the children of Permelia Stone, the following receipt, signed by John Stone and Permelia Stone: "Auburn, February 2, 1850. Received of Luther Stone five hundred dollars, it being a part of my wife's portion." This receipt was found by the administrator in the desk of the intestate, upon his file of notes. In this court, the presiding judge found, as a matter of fact, that this money was paid to Mrs. Stone.

The second reason of appeal was, that the judge of probate

allowed, as an advancement towards the share of Isaac N. Hart-
well, a receipt, found by the administrator, upon a further exam-
ination of the papers in the desk and chest of the deceased, in
a letter filed with a bundle of papers and letters from the State
Lunatic Hospital at Worcester. This receipt was in these
words : " Oxford, January 21, 1845. Received of Luther Stone
eight hundred and three dollars and nineteen cents, for the sup-
port of Mrs. Sarah Hartwell at the State Lunatic Hospital,
Worcester, Mass., as a part of her portion out of her father's
estate. Isaac B. Hartwell." Mrs. Hartwell was insane when
her husband gave this receipt, and her father, the intestate, con-
tributed towards her support in the hospital, and the money, for
which the receipt was given, was paid for her support. She
continued insane till her death, which happened before her
father's, and her husband still survives her.

The appellants contended that these receipts were insufficient
to prove advancements made to their respective mothers. But
if otherwise, for the purpose of showing a revocation of these
receipts, and of all charges for advancements, and the intention of
the intestate to place his children upon a footing of equality, the
appellants offered to prove that in January 1852 he duly made
and executed his will, wherein, after devising certain real estate
to the two oldest children of his daughter Julia, he left all the
rest of his estate as intestate property; and that in June 1852
he cancelled this will, and gave deeds of certain real estate to
the same grandchildren. But the presiding judge ruled that this
evidence was inadmissible for the purposes for which it was
offered.

The third reason of appeal was, that divers charges for ad-
vancements to the heirs at law were not allowed by the judge of
probate. The appellants, for the purpose of establishing valid
charges for advancements to all the children of the intestate,
which charges had been lost or destroyed, offered to prove the in-
testate's declarations, made from time to time up to 1852, that
he actually so made and charged the following advancements :
To Loomis Stone, $2,750; to Luther Stone, $2,000; to Lewis
Stone, $1,500; to Julia Smith, $1,400; to Sarah Hartwell,

$1,100; to Permelia Stone, $500. The appellants produced the book of accounts kept by the intestate, from the latter part of which three leaves appeared to have been cut out; but no such charges as alleged were to be found on the book. The presiding judge was of opinion that there was no evidence of the existence or loss of the supposed charges, and no foundation laid for introducing secondary evidence, and rejected the testimony.

And the presiding judge, upon the whole matter, ordered the decree of the judge of probate be affirmed, and the case remitted to the probate court.. The appellants alleged exceptions to the above rulings and order.

*I. M. Barton*, for the appellants. The gift to the husband of Sarah Hartwell, for his wife's support, was no advancement to his wife, who was insane and incapable of assenting. Sts. 1783, *c.* 36, § 7; 1805, *c.* 90, § 3. Rev. Sts. *c.* 61, §§ 6, 9, 11, *&* *commissioners' notes.* *Bullard* v. *Bullard,* 5 Pick. 527. *Seagrist's Appeal,* 10 Barr, 424. Bac. Ab. Executors & Administrators, K.

The receipt of Hartwell was not sufficient evidence of an advancement to his wife. The distinction between the proof of an advancement and of the ademption of a legacy is well settled; and the cases as to ademption of legacies do not apply. Written acknowledgments of advancements, being a statute mode of conveyance of the rights of descendants, and operating on real estate, as well as on personal, should be construed strictly. Rev. Sts. *c.* 61, § 9. *Ashley, appellant,* 4 Pick. 24. *Stearns* v. *Stearns,* 4 Pick. 24. *Bulkeley* v. *Noble,* 2 Pick. 337. *Osgood* v. *Breed,* 17 Mass. 358. *Barton* v. *Rice,* 22 Pick. 510. *Paine* v. *Parsons,* 14 Pick. 318. 4 Kent Com. (6th ed.) 418. Cooper's Justinian, 515, 575, *notes.* A daughter's husband is not a descendant within the meaning of the statute. Webst. Dict. Descendant. To admit the receipt of a husband as proof of an advancement to the wife would encourage collusion and fraud.

The receipt, signed by John Stone and Permelia Stone, shows an advancement to him, but does not express any intention on her part to be bound, and is not sufficient proof of an advancement to her; and the finding of the presiding judge, that the

VOL. I.                        50

money was paid to her, does not alter the case. *Bulkeley* v *Noble,* 2 Pick. 337. *Catlin* v. *Ware,* 9 Mass. 220. *Lufkin* v. *Curtis,* 13 Mass. 223.

The situations, in which these receipts were found by the administrator, show that the intestate did not intend that they should be used as evidence of advancements. *Ashley, appellant,* and *Bulkeley* v. *Noble,* above cited.

These receipts were merged and extinguished by the will made in January 1852; and were not revived by its cancellation. The doctrine of advancements applies only to cases where no will has been made. *Jones* v. *Richardson,* 5 Met. 253. *Thompson* v. *Carmichael,* 3 Sandf. Ch. 120. *Snelgrove* v. *Snelgrove,* 4 Dessaus. 274. *Newman* v. *Wilbourne,* 1 Hill Ch. 10. Com. Dig. Gardian, G. 2. *Leake* v. *Leake,* 10 Ves. 489. *Onslow* v. *Michell,* 18 Ves. 494.

The declarations of the intestate that he had made certain specific charges on his book, as advancements to his children, and the production of his book, with three leaves cut out, in the part thereof where such charges are usually made, laid a sufficient foundation for the introduction of secondary evidence to sustain such charges.

*G. F. Hoar,* for the appellees. The intent of the giver, and not of the party receiving, is to govern, in construing acknowledgments of advancements. Children have no rights in their father's estate until his death. The distinction between an advancement and an ademption of a legacy consists only in the mode of proof, the statute requiring written evidence; and not in the facts requisite to establish it. *Paine* v. *Parsons,* 14 Pick. 318. Cooper's Justinian, 516, *note.* The receipt of John and Permelia Stone is sufficient evidence that the money paid by her father to her was received as an advancement.

Payment of money to the husband for the support of the wife, if meant by the giver as an advancement, will operate as such against the issue of the wife. 4 Kent Com. (6th ed.) 417 & *seq.* *Osgood* v. *Breed,* 17 Mass. 356. *Copley* v. *Copley,* 1 P. W. 147. *Biggleston* v. *Grubb,* 2 Atk. 48. *Richards* v. *Humphreys,* 15 Pick. 133, 140. 2 Williams on Executors, 1145, 1146, and cases cited.

The receipt of Hartwell was evidence of an advancement to his wife. *Bulkeley* v. *Noble*, 2 Pick. 337. *Paine* v. *Parsons*, 14 Pick. 318. The husband, to whom the money was paid, and who signed the receipt, was the lawful representative of his in-sane wife. If the money had been paid to the wife, it would have immediately become his. The word "descendant," in the Rev. Sts. *c.* 61, § 9, requiring the acknowledgment in writing of an advancement to be "by the child or other descendant," in-cludes the husband, or any person who takes by operation of law. 2 Bl. Com. 201. Rev. Sts. *c.* 2, § 6, *cl.* 1. *Merchants Bank* v. *Cook*, 4 Pick. 405. *Snell* v. *Bridgewater Cotton Gin Manuf. Co.* 24 Pick. 296.

These receipts appear to have been preserved by the intestate as evidence of advancements. Besides; this was a question of fact, and passed upon by the presiding judge, and as he has not fully reported the evidence, no exception lies to his ruling on this point. *Stearns* v. *Fiske*, 18 Pick. 24.

The will, made in January 1852, was not offered to show the intent of the testator expressed therein, by way of recital or otherwise, to extinguish the advancements; but to show that he had made such a disposition of his estate as would, by implica-tion, revoke any dispositions made with a view to having his estate settled by law. Any implication, arising from the execution of the will, was destroyed by its revocation before it took effect.

Whether the evidence offered satisfactorily proved the former existence of the lost charges was a question of fact, on which the decision of the presiding judge was final. Parol evidence of the declarations of the intestate was inadmissible to prove the existence of such charges.

THOMAS, J. This is an appeal from the decree of the judge of probate for this county, ordering a distribution among the heirs at law of Luther Stone, deceased, intestate. The questions of law, which have been argued, arise upon exceptions to the rulings of the judge by whom the cause was heard on appeal.

The first exception, and that chiefly pressed in the argument, was to the allowance of two receipts as advancements against the appellants, heirs at law of Luther Stone; the appellants con

tending as matter of law, *first*, that the receipts or acknowledg-
ments in writing were insufficient, and *secondly*, that they had
been subsequently merged or extinguished in a last will and
testament of the deceased.

The other exception was to the refusal of the presiding judge
to admit evidence offered to prove advancements alleged to have
been made to others of the heirs at law.

The questions involve the construction of the Rev. Sts. *c.* 61,
§§ 6, 9, 11. These embody, in substance, the *St.* of 1805, *c.* 90, § 3.
Section 9 is as follows: "All gifts and grants shall be deemed
to have been made in advancement, if they are expressed in the
gift or grant to be so made, or if charged in writing by the
intestate as an advancement, or acknowledged in writing as
such by the child or other descendant." It is under the third
mode, the acknowledgment in writing by the child or other
descendant, that the questions as to both of the receipts arise.

In relation to the receipt signed by John and Permelia Stone,
we have had no doubt. The money was paid to the daughter.
The acknowledgment in writing is signed by her and her hus-
band. The form of the receipt is immaterial, the meaning and
purpose being plainly expressed. The receipt is a clear acknowl-
edgment by both husband and wife, that the five hundred dollars
were received as a part of her portion of her father's estate.

The question as to the allowance of the receipt of Isaac N.
Hartwell is not without difficulty. It is clearly just that it
should be allowed. The money was advanced and used for the
support of the daughter. The intent of the father to treat the
amount paid as an advancement, and the consent of the hus-
band so to receive it, appear clearly by the receipt itself. The
money is in express terms acknowledged to have been received
for the support of the daughter at the hospital, " as a part of
her portion out of her father's estate." The daughter was insane
and incapable of making the acknowledgment in writing, and
the only question is, whether that of the husband was, under the
facts of the case, sufficient.

There would seem to be no good reason for holding that the
receipt or acknowledgment must be signed by the child person-

ally, or that it could not be signed by an agent or attorney having authority for the purpose. In the present case, the daughter was incapable of making such appointment, on two grounds, coverture and insanity. But such authority may result from the relation of the parties, as well as from express appointment. The personal property of the wife, which comes into the possession of the wife during coverture, becomes absolutely the husband's. A gift of money or chattels made by the father to the daughter, by way of advancement or otherwise, becomes at once the property of the husband. His receipt would discharge a debt or cancel a note or mortgage due to her. A legacy given to her may be recovered by him. So may her distributive share of the estate. And his receipt would be a sufficient discharge to the executor or administrator for the payment of either. These are familiar principles, and are to be resorted to in the construction of the provision of the statute. Reading the statute in the light they afford us, we think this receipt within the fair scope of its provisions and sufficient evidence of the advancement.

We think the practical construction of the statute has been, that where the child or other descendant was a married woman, the receipt or acknowledgment should be signed by the husband. In the case of *Paine* v. *Parsons*, 14 Pick. 318, the receipt of the husband was held to be sufficient for the ademption of a legacy given to the wife. In *Jones* v. *Richardson*, 5 Met. 253, the receipts were given by the husband, and though the case was decided upon another ground, the court say expressly, that had the father died intestate, the receipts would have been good evidence of advancements. It is true that in neither case the precise point of the sufficiency of the husband's receipt was discussed, but in both it was clearly disclosed by the form of the receipts. The very fact that it was not raised furnishes pretty strong indication of what had been the practical construction of a statute so familiar to the profession.

For the purposes of the present case, however, it is only necessary to determine, that where the wife is incapable of making the acknowledgment in writing, by reason of insanity, and the

50 *

gift is one of money or personal chattels, and made by the intestate for the support of his daughter, and intended by him as an advancement, the acknowledgment in writing may be made by the husband.

We do not see any evil consequences to flow from such decision, as anticipated by the learned counsel for the appellants. There would seem to be little danger of collusion by a father with his son-in-law to defraud his daughter, and if things came to that pass, the purpose would easily be carried out by charging the advancement, instead of taking a receipt or acknowledgment.

We see nothing, in the situation in which these receipts were found, to indicate that the testator did not intend they should be used as evidence of advancements. Upon the face of the papers the intention is obvious. The receipt of Mr. and Mrs. Stone was found upon his file of notes ; that of Mr. Hartwell, in the bundle of letters written upon the matter, to accomplish which the money was advanced.

Nor were the receipts merged or extinguished in the will, made in January 1852, and cancelled in June of the same year. It would be going very far to say that the will, as made, being only a devise of a parcel of the real estate to two of his grandchildren, and leaving the rest of his estate, real and personal, intestate, would have operated as an extinguishment, if it had taken effect as a will. The ground on which a will is held to operate as an extinguishment is, that the testator must be deemed to have graduated his legacies with reference to prior advancements, (*Jones* v. *Richardson,* 5 Met. 253,) a reason not applicable to a will like this. But whether this would have been the result or not, this will never took effect. If the making of the will indicated a purpose to extinguish the receipts, the cancelling of the will as clearly indicated a change of that purpose. In looking at the cases cited by the counsel for the appellants, we find no ground for affirming that a will, using that word for want of a better, that never took effect as such, operated as an extinguishment or merger of previous advancements.

The exception to the exclusion of the evidence offered of the ex-

istence and loss of supposed charges by the intestate against his other children, was not strongly pressed. It was in effect an offer to prove, by the declarations of the intestate in the country, charges which the statute requires to be in writing. There was no offer to show the existence of any charges in a book kept by the intestate, by a witness who had seen them and could testify to their contents. No foundation was laid for the introduction of secondary evidence. It is not easy to see how there could be, when there was no competent evidence that the primary ever existed. The production of a book of the testator, from which leaves appeared to have been cut, proved nothing. The law could not presume the act was fraudulently done. In the absence of evidence, the presumption is that it was rightfully done, that is by the testator himself.       *Exceptions overruled.*